Porter, J.
delivered the opinion of the *85 court. The plaintiffs in this action had a claim on William Noble for $6323 15 cents, evidenced by his note of hand for that sum, and, in order to secure the payment of it, they forwarded directions to the defendants to attach the steam boat Paragon. In pursuance of those directions the boat was seized, on her arrival in this port, and after some time had elapsed, the appellees believing that the debt could be more speedily recovered by releasing the attachment, and taking other property, entered into an arrangement with the house of Noble & Wilkins, by which they agreed to receive 1500 bbls. of flour under the conditions expressed in the following agreement.
East'n District.

June, 1822.

"Thomas F. Townsley & Co. agree to receive from Messrs. Noble & Miller, 1500 bbls. of flour, fresh, and to pass inspection as fine and superfine: the same to be deposited with T. F. Townsley & Co. for sale, and to be sold within sixty days from this date and on a credit not exceeding four months, in notes approved by the parties. Thomas F. Townsley & Co. to charge but one and one-fourth percent commission on the sales."
“The above is given to secure the payment *86 of William Noble’s note sent for collection by G. A. & J. Madeira, amounting to $6323 15 cents, exclusive of interest, &c. In the event of the proceeds of the flour not covering the sums above stated, Messrs. Noble & Miller will immediately pay the balance to Thomas F. Townley & Co. without defalcation.”
Immediately after this arrangement was concluded, the defendants communicated it to the plaintiffs, and in a short time after received a letter, from the latter expressing their perfect satisfaction of the course they had pursued.
The flour was not sold within the sixty days, as specified in the agreement, and in consequence thereof this action has been instituted in which the plaintiffs allege, that the defendants, by keeping the property on hand, for a longer space of time than the period specified in the agreement, have discharged Noble & Wilkins from their engagement, and deprived the plaintiffs of all recourse on them. That this detention was an act, unjustifiable, exhibiting negligence and a want of that care and attention, which as agents they owed to the affairs of their principal; that by reason thereof, the flour was ultimately sacrificed at *87 $1 50 cents per bbl. when, if sold in due season, it would have brought from four to five. They therefore pray that they may have judgment for the difference in amount, between the sum produced by the sale of the flour and the note forwarded for collection.
The defendants pleaded the general issue, and there being judgment in their favor, the plaintiffs have appealed.
The degree of diligence which is required of an agent, who receives compensation for the business he transacts, is that which a prudent man pays to his own affairs, what is called in law, ordinary diligence, and which of course creates a responsibility for ordinary neglect. We find it stated it is true, in the Curia Phillipica that a factor is liable for levissima culpa, Curia Phil. lib. Factores, cap. 4, no. 40, but that expression, when used in the Spanish language, is expressly declared to mean that species of neglect we have just described "Otrosi decimos que y a otra culpa a que dizen leuis, que es como pereza, o como negligencia. E otro y cha a que dizen levissima, que tanto quiere decir, como non auer ome aquella fenencia en aliùar e guardar la cosa que otre ome de buen seso auria, si *88 laténuisse." Part. 7, tit. 33, law 11: where a man does not use the same diligence in administering and taking care of a thing, which another man of good understanding would use, if it belonged to himself.
Agents, however, should pursue the instructions they receive, and like all others they must comply with their engagements, or be responsible for a violation of them. In the case before us, the appellees undertook to sell the flour within a limited time, and they have not done so. It follows, as a consequence, that if it was practicable to dispose of the property within the period agreed on, the plaintiffs have lost their recourse against Noble & Miller, and consequently the defendants must be responsible to them for all damages, which they have sustained by losing that recourse. This is the gist of the action, and on the correct solution of the question, presented by the evidence in relation to the possibility of making the sale, depend the rights of the parties now before us.
The testimony taken is voluminous and is spread over between thirty and forty pages of the record. It is impossible to abridge it, so as to convey truly the impression made by an *89 attentive perusal of the whole, as given on trial. We have duly and deliberately weighed it, and are of opinion that it was out of the power of defendants to have disposed of the property within the limitation expressed in the contract; unless they had sent it to auction, which we think they were not authorised to do.
Maybin for the plaintiff, Grymes for the defendant.
This point disposed of, it is established beyond doubt that their conduct afterwards was that of honest men, diligent in the discharge of their trust, and anxious to do every thing in their power to promote the interest of their principal. It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.